UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT RICKETTS, ) | 3:23-CV-01079 (SVN) |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| WESTWOOD CONDO ASSOC.; ) | |
| FRANCIS OGORMAN; JONATHAN ) | March 31, 2025 |
| CHAPEL; ERIC JUDGE; MICHELLE ) | |
| ANDERSON; XIOMARA PAGAN; ) | |
| JUDY CARR; FELDMAN, PERLSTEIN, ) | |
| AND GREEN, LLC; ROSA ) | |
| BUSTAMANTE; and WESTFORD REAL ) | |
| ESTATE MANAGEMENT ) | |
|     *Defendants*. ) | |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

Sarala V. Nagala, United States District Judge.

In this civil rights action, Plaintiff Robert Ricketts alleges that Defendants violated his rights when they failed to repair the leaking roof and ceiling above his condo and resolve carbon monoxide leaks, and subsequently sought to collect a debt from him. The third amended complaint ("TAC") consists of thirty-one claims asserted against ten Defendants. These claims include alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), violations of the Fair Housing Act ("FHA"), negligence, breach of contract, breach of a fiduciary duty, breach of the Connecticut Unfair Trade Practices Act ("CUTPA"), and unjust enrichment. Defendants include Westwood Condo Association; Westwood Condo Association members Frank O'Gorman,[1] Eric Judge, Michelle Anderson, Xiomara Pagan, and Judy Carr; Rosa Bustamante;[2] and Westford Real

---

[1] In his TAC, Plaintiff refers to Defendant Francis O'Gorman as Frank O'Gorman, Frank O'gorman, Francis OGorman, Francis O'Gorman, and Frank OGorman. In this ruling, the Court will refer to this Defendant as Francis O'Gorman, as that is the way he referred to himself in his waiver of service. *See* Waiver of Service, ECF No. 48.

[2] In the TAC, Plaintiff refers to Defendant Rosa Bustamante as Rosa Bustamante, Rossanna Bustamante, and Rosana Bustamante. In this ruling, the Court will refer to this Defendant as Rosa Bustamante, as that is the way she spelled her name in the motion to dismiss. *See* Westwood Defs.' Br., ECF No. 77-1, at 16.

Estate Management (collectively "the Westwood Defendants"); as well as Jonathan Chappell,[3] an attorney at Feldman, Perlstein, and Greene, LLC, and Feldman, Perlstein, and Green, LLC (collectively the "Attorney Defendants").

Currently pending before the Court are the Westwood Defendants' and the Attorney Defendants' motions to dismiss. The Westwood Defendants seek to dismiss Plaintiff's TAC as to Defendants Westwood Condominium Association, Inc., Judge, Anderson, Pagan, Carr, Bustamante, and Westford Real Estate Management for lack of personal jurisdiction because Plaintiff failed to properly serve them. *See* Westwood Defs.' Br., ECF No. 77-1, at 5–7. Additionally, they seek to dismiss counts three through ten, twelve through sixteen, and twenty-one through twenty-eight for failure to state a claim upon which relief can be granted. *Id.* at 7–16. The Attorney Defendants seek to dismiss counts one, two, twenty-nine, and thirty of the TAC for failure to state a claim and lack of subject matter jurisdiction, and because the claims are barred by "absolute immunity/litigation privilege." *See generally* Attorney Defs.' Br., ECF No. 76. Plaintiff opposes both motions to dismiss and generally argues that service was proper as to all Defendants; he sufficiently pleaded all claims; and his claims are not barred by absolute immunity or the litigation privilege. *See* Pl.'s Opp. Brs., ECF Nos. 86, 87.

For the reasons described below, the Court agrees with Defendants. The complaint is thus DISMISSED. As Plaintiff, who is an attorney,[4] has been given three opportunities to amend, the Court does not believe that further leave to amend is appropriate.

---

[3] In the TAC, Plaintiff spells Defendant Jonathan Chappell's last name as Chapel, Chapell, and Chappell. In this ruling, the Court will refer to this Defendant as Jonathan Chappell, as that is the way he spelled his name in the motion to dismiss. *See* Attorney Defs.' Br., ECF No. 75.

[4] As of the date of this ruling, a search for Plaintiff's name on the State of Connecticut Judicial Branch website reveals that he holds an active Connecticut bar license. *See Attorney Firm Lookup*, STATE OF CONNECTICUT JUDICIAL BRANCH, https://www.jud.ct.gov/attorneyfirminquiry/JurisDetail.aspx (last visited Mar. 31, 2025). As the Court has previously noted, Plaintiff is not entitled to the special solicitude ordinarily afforded to *pro se* litigants because he is an experienced attorney and has litigated roughly the same issues against Defendants for some time. *See* Order, ECF No. 68.

I.      FACTUAL BACKGROUND

The Court accepts the following allegations in Plaintiff's complaint as true for purposes of deciding Defendants' motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff purchased a condominium at Westwood Condominiums in West Hartford, Connecticut in October of 2019. Pl.'s TAC, ECF No. 72, ¶¶ 10, 24. Westwood Condominiums is maintained by the Westwood Condo Association Inc. ("Association"), which was made up of the following members: Francis O'Gorman, Eric Judge, Michelle Anderson, Xiomara Pagan, and Judy Carr. *Id.* ¶¶ 10–15. The Association is responsible for completing roof, chimney, and furnace repairs. *Id.* ¶¶ 36, 37, 64.

On the day of sale, Plaintiff identified a "severe leak" in his unit's roof, due to its "poor condition." *Id.* ¶ 35. He reported the leak to the Association and the property management company, and requested that they repair the roof. *Id.* ¶¶ 38–39. Plaintiff also informed "the defendants" that he suffered from childhood asthma and that his children suffer from childhood asthma, so they "could not tolerate exposure to mildew or black mold." *Id.* ¶ 43. Despite follow-up from Plaintiff, the Association did not fix the leak, which led to property destruction, water damage to Plaintiff's condo, loss of rent, and the spread of black mold. *Id.* ¶ 42, 44, 47–49, 51. In or around June of 2021, the ceiling in Plaintiff's condo "fell in." *Id.* ¶ 45.

In addition to leak issues, beginning around February 1, 2020, the carbon monoxide detectors in Plaintiff's condo went off approximately 20 times, requiring the fire department to respond and Plaintiff to leave his condo each time. *Id.* ¶¶ 52–56, 58, 59. Plaintiff asserts that Defendant O'Gorman "lie[d] to the West Hartford Fire Department and [told] them that the Carbon monoxide was caused by the fire place in one of the building's units." *Id.* ¶ 57. Approximately six months later, the fire department told Plaintiff and other residents that a failing water boiler

caused the carbon monoxide leak, and that the Association knew of the leak but did not have the funds to fix it. *Id.* ¶¶ 60–61. As a result, the fire department told residents, including Plaintiff, that they were repeatedly exposed to carbon monoxide, although the Association would not admit as much. *Id.* ¶ 62–63.

On or around June 1, 2021, Plaintiff informed the Association that he could no longer live in his condo "because of its condition." *Id.* ¶ 65. Defendant O'Gorman told him that the Association would not fix the unit and "would instead hide behind the Connecticut Condo Act." *Id.* ¶ 66. Defendant Chappell communicated a similar message to Plaintiff and also stated that "the association had no intention of fixing the unit and would instead abuse the Connecticut Condo Act. [sic] to foreclose and exhaust the plaintiff's equity." *Id.* ¶ 68. In November of 2021, the Association initiated a foreclosure action against Plaintiff. *Id.* ¶ 69. In April of 2023, the Association also sent Plaintiff "time sensitive notices" at an "address where it knew the plaintiff did not live or receive mail and began to assess fines for noncompliance with notices that it knew plaintiff would never receive." *Id.* ¶ 70. Plaintiff further alleges, in vague terms, that Defendant Feldman, Perlstein, and Greene, LLC, through Defendant Chappell, sought to collect an unspecified debt from Plaintiff. *Id.* ¶¶ 20, 21, 68. Plaintiff alleges that, in attempting to collect the debt, Defendant Chappell sought to "harass" and "oppress" Plaintiff, including by insulting him, informing him he would "create fines to diminish the plaintiff's equity," teasing him "that there would be no repairs made to the premises," sending emails mocking him, and taunting him. *Id.* ¶¶ 72, 73.

## II.     FAILURE TO EFFECTUATE SERVICE

Defendants Westwood Condominium Association, Eric Judge, Michelle Anderson, Xiomara Pagan, Judy Carr, Rosa Bustamante, and Westford Real Estate Management have moved

to dismiss Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(5) because they have not been properly served.[5] *See* Westwood Defs.' Br., ECF No. 77-1, at 1, 5–7.  Because the Court finds that Plaintiff failed to properly serve these Defendants, it concludes that it lacks personal jurisdiction over them and dismisses all claims against them.

> A. Legal Standard

Federal Rule of Civil Procedure 4 sets forth the rules for service of process in a civil action, and Rule 12(b)(5) provides that a defendant may move to dismiss a complaint due to insufficient service of process.  *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007).  "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules."  *Id.*  Proper service of process pursuant to Rule 4 is a prerequisite to a court's exercise of personal jurisdiction over a defendant.  *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate."  *Rzayeva*, 492 F. Supp. 2d at 74 (citation and internal quotation marks omitted).

The manner in which service can be made on a defendant under Rule 4 depends on the defendant's status.  If the defendant is an individual within the United States, service may be accomplished according to the relevant state law for serving a summons in the state where the district court is located or where service is made, or by one of the following means:  delivery of the summons and complaint to the individual personally, leaving a copy of the summons and complaint at the individual's "dwelling or usual place of abode with someone of suitable age and

---

[5] Although Defendant O'Gorman is among the Westwood Defendants, he did not challenge service as improper because he waived service.  *See* ECF No. 48.  Therefore, while the remaining Westwood Defendants assert they were improperly served and thus all claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5), Defendant O'Gorman does not.

discretion who resides there," or delivering a copy of the summons and the complaint to an authorized agent.  Fed. R. Civ. P. 4(e).  If the defendant is a domestic corporation, partnership, or association, Rule 4(h) provides that service can be made according to the relevant state law for serving a summons in the state where the district court is located or where service is made, or by delivering a copy of the summons and the complaint to "a managing or general agent" or "any other agent authorized by appointment or by law to receive service of process."  Unless service is waived pursuant to Fed. R. Civ. P. 4(d), a plaintiff must file an affidavit proving service.  Fed. R. Civ. P. 4(*l*).

If a plaintiff does not properly serve a defendant within ninety days after filing the complaint, Rule 4(m) provides that "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  That Rule further provides that, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed R. Civ. P. 4(m).

Courts in this circuit have extended the deadline for a plaintiff to effectuate proper service pursuant to Rule 4(m) in two ways.  First, the court *must* extend the service deadline if the plaintiff can demonstrate "good cause," which is a high standard, generally requiring "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond [his] control."  *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013) (citations and internal quotations marks omitted).

Second, the court *may* extend the service deadline in its discretion, "even where there is no good cause shown."  *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015) (summary order).  Courts considering whether

to exercise discretion to extend the service deadline in the absence of good cause consider factors such as: whether a refiled action would be time-barred; whether the defendant had actual notice of the claims; whether the defendant attempted to conceal the defect in service; and whether the defendant would be prejudiced by an extension of the service period. *See, e.g.*, *John v. City of Bridgeport*, 309 F.R.D. 149, 154 (D. Conn. 2015); *Jordan*, 928 F. Supp. 2d at 598.

B. Discussion

Plaintiff has filed no proof of service or waiver of service as to Defendants Westwood Condominium Association, Judge, Anderson, Pagan, Carr, Bustamante, and Westford Real Estate Management, despite initiating this case more than eighteen months ago and being warned by both the Court and these Defendants that proper service had never been effectuated. *See* Order, ECF No. 8 (noting that "Plaintiff has not yet filed proof of service of the complaint on Defendants"); Order, ECF No. 11 (extending Plaintiff's service deadline beyond the 90 day limit set forth in Fed. R. Civ. P. 4(m) because Plaintiff failed to filed proof of service, and warning Plaintiff that the Court may dismiss his action for failure to serve); Order, ECF No. 13 (noting that Plaintiff must show proof of service as to all Defendants and extending Plaintiff's deadline to do so a second time); Westwood Defs.' First Mot. to Dismiss, ECF No. 63, at 1 (seeking to dismiss Plaintiff's second amended complaint for insufficient service of process). As these Defendants have challenged the validity of service on them, Plaintiff must demonstrate that service was proper. *See Rzayeva*, 492 F. Supp. 2d at 74.

The Court is unpersuaded by Plaintiff's arguments that service was proper. Plaintiff asserts that "[i]t is uncontroverted that Defendant Chapel [sic] represented that he accepted service for the defendants in May of 2022" and that Defendant Chappell made representations to the Court to that effect in August of 2023. Pl.'s Opp. Br., ECF No. 86, at 4. Although Plaintiff includes no citations,

7

the Court believes he is referring to an email he received from Defendant Chappell on May 26, 2022, accepting service on behalf of "the association," which Plaintiff previously submitted in this case in response to an order from the Court concerning service. *See* Order, ECF No. 11; Pl. Response, ECF No. 12, at 4. But now, as then, Plaintiff fails to explain why the Court should accept this email as proof of service as to *all* Defendants, including the individual Association members, who now challenge the lack of proper service in this case. *See* Order, ECF No. 13. Further, Defendant Chappell did not enter a notice of appearance in this matter until December 22, 2023. *See* Notice, ECF No. 19. As such, the Court finds he could not have made representations to *this* Court regarding accepting service in August of 2023, as he had not yet even appeared in this matter at that time.

Because Plaintiff has failed to establish proof of service as to Defendants Westwood Condominium Association, Judge, Anderson, Pagan, Carr, Bustamante, and Westford Real Estate Management, the Court finds it lacks personal jurisdiction over these Defendants and dismisses all claims as to these Defendants.[6] *See Omni Cap. Int'l, Ltd.*, 484 U.S. at 104.

Additionally, the Court declines to further extend Plaintiff's deadline to serve these Defendants. Plaintiff has been warned multiple times that his case would be dismissed if he failed to properly serve the complaint and summons, and the Court has extended his deadline to do so twice. Plaintiff has not suggested that a re-filed action would be time-barred. While it is true that the Defendants who have challenged service received notice of the action—as evidenced by their appearance through counsel and responses to Plaintiff's complaints—they never sought to conceal the defects in service, and in fact timely asserted the defense of improper service of process

---

[6] As discussed *supra* at note 5, Defendant O'Gorman waived service. Therefore, although all claims are dismissed as to the other Westwood Defendants for lack of personal jurisdiction, this dismissal does not extend to Defendant O'Gorman. Plaintiff's claims asserted against Defendant O'Gorman are addressed on the merits below.

(twice).⁷  These Defendants would be prejudiced by any further extension of this deadline as they would be required to continue to expend resources on this lawsuit.  Therefore, the Court exercises its discretion to deny any further extensions for service of process.  Plaintiff's claims against Defendants Westwood Condominium Association, Judge, Anderson, Pagan, Carr, Bustamante, and Westford Real Estate Management are therefore dismissed under Rule 12(b)(5).

### III.    FAILURE TO STATE A CLAIM AS TO FEDERAL LAW CLAIMS

Plaintiff asserts two federal claims, both of which are challenged in Defendants' motions to dismiss.  First, Plaintiff asserts that the Attorney Defendants violated the FDCPA.  Second, Plaintiff asserts that Defendant O'Gorman violated the FHA.⁸  As Plaintiff fails to state a claim under either law, the Court grants Defendants' motions to dismiss as to these claims.

#### A.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

---

⁷ The Westwood Defendants initially filed a motion to dismiss arguing, *inter alia*, that Plaintiff failed to properly serve them and thus all claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).  *See* Westwood Defs.' Br., ECF No. 63.  Plaintiff then filed a TAC, *see* ECF No. 72, which Defendants Westwood Condominium Association, Judge, Anderson, Pagan, Carr, Bustamante, and Westford Real Estate Management again challenge on the basis of improper service.  *See* ECF No. 77-1.

⁸ Plaintiff asserts the same FHA claim against each of the Westwood Defendants.  *See* TAC at ¶¶ 78–118.  All Westwood Defendants except Defendant O'Gorman are dismissed from this action because the Court lacks personal jurisdiction over them.  *See* Section II, *supra*.  Therefore, the Court considers the FHA claim as to only Defendant O'Gorman.  In doing so, however, it highlights that because the asserted FHA claim as to each Westwood Defendant is identical, the reasoning applied below in support of dismissal of the claim against Defendant O'Gorman would apply equally to the other Westwood Defendants.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

B. Discussion

1. FDCPA Claims

The FDCPA was enacted to "protect consumers from . . . unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S. Rep. No. 95-382, at 1 (1977); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (discussing the purpose of the FDCPA). To that end, the FDCPA prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Relevant here, such

prohibited conduct includes, but is not limited to, "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person," and "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader." 15 U.S.C. § 1692d(1)–(2); *see also Kropelnicki*, 290 F.3d at 127 (describing the conduct explicitly proscribed in § 1692d as "examples of particular practices that debt collectors are forbidden to employ"). A debt collector also may not mislead a consumer when attempting to collect a debt, including by "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." *See* 15 U.S.C. § 1692e(5).

Generally, courts in this circuit apply the "least-sophisticated consumer standard" in assessing FDCPA claims, to "'(1) ensure the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protect debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.'" *Kropelnicki*, 290 F.3d at 127 (cleaned up) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993)). But where a party is represented by an attorney, courts in this circuit decline to apply the least-sophisticated consumer standard. *See id.* at 127–28. That is because "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, [the Court] assume[s] the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Id.* at 128; *see also White v. Fein, Such, & Crane, LLP*, No. 15-cv-00438-LJV-HKS, 2023 WL 1767159, at *4 (W.D.N.Y. Feb. 3, 2023) (collecting cases).

Although Plaintiff is proceeding *pro se*, he is an attorney licensed to practice law in Connecticut. The Attorney Defendants argue that the Court should therefore decline to extend the FDCPA's protections to Plaintiff because, as an attorney, he is not the "least-sophisticated consumer." *See* ECF No. 76 at 4–6. Relying on the Second Circuit's determination that attorneys

11

can adequately protect consumers against fraudulent or harassing behavior, *Kropelnicki*, 290 F.3d at 127–28, and the Court's prior acknowledgement that *pro se* attorneys are not afforded the same special solicitude as other *pro se* parties, they argue that Plaintiff cannot allege FDCPA violations because he is an attorney himself.  *See* ECF No. 76 at 4–6.  For his part, Plaintiff asserts that the holding in *Kropelnicki* only extends to circumstances in which an attorney is representing a client.  *See* Pl.'s Opp., ECF No. 87 at 6–7.

The Court stands by its prior determination that Plaintiff should not be afforded the special solicitude ordinarily accorded to *pro se* litigants because he is an experienced attorney and has litigated roughly the same issues against Defendants for some time.  *See* Order, ECF No. 68 (citing *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (recognizing that the degree of solicitude "may be lessened" when the *pro se* litigant is "experienced in litigation and familiar with the procedural setting presented.")); *see also Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264, 271 (S.D.N.Y. 2001) (declining to give "traditional *pro se* deference" to an attorney proceeding *pro se* in FDCPA case).  Nonetheless, the Court declines to decide the extent to which FDCPA protections extend (or do not extend) to attorneys proceeding *pro se*, as it finds that, even assuming an attorney is permitted to bring an FDCPA claim, Plaintiff has failed to adequately allege such a claim.

"To establish a violation under the FDCPA, (1) the plaintiff must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a debt collector, and (3) the defendant must have engaged in an act or omission in violation of the FDCPA requirements." *Doody, Tr. of Mary Y. Doody Revocable Tr. Dated June 17, 2002 v. Nationstar Mortg., LLC*, No. 3:21-CV-00609 (VDO), 2023 WL 8476322, at *4 (D. Conn. Dec. 7, 2023) (citing 15 U.S.C. § 1692 *et seq.*;

12

*Maleh v. United Collection Bureau, Inc.*, 289 F. Supp. 3d 265, 270 (E.D.N.Y. 2018)). For an FDCPA claim to proceed, Plaintiff must "present non-conclusory allegations about the debt collector's allegedly harassing or abusive conduct." *Garcia v. Law Offices Howard Lee Schiff P.C.*, No. 3:16-cv-791 (VAB), 2017 WL 1230847, at *4 (D. Conn. Mar. 30, 2017) (collecting cases); *see also Oliver v. U.S. Bancorp*, No. 14-cv-8948 PKC, 2015 WL 4111908, at *5 (S.D.N.Y. July 8, 2015) (discussing the pleading standard for an FDCPA case and collecting cases).

Although the nature and extent of the debt is not fully explained in the TAC, the Attorney Defendants do not dispute that Plaintiff allegedly owes a debt or that the Attorney Defendants are debt collectors as defined by the FDCPA. The Attorney Defendants do argue, however, that Plaintiff has not adequately alleged that the Attorney Defendants engaged in conduct that violated the FDCPA. The Court agrees with the Attorney Defendants on this point. Although Plaintiff baldly asserts that Defendant Chappell "engaged in a course of conduct aimed as [sic] harassing and oppressive to the defendant,"[9] "[i]nsulted the plaintiff," "informed the plaintiff that he would create fines to diminish the plaintiff's equity in collecting the debt," "[t]eased the plaintiff that there would be no repairs made to the premises," "[s]ent emails mocking the plaintiff," and "[t]aunted the plaintiff by making clear that he had no concern about conducting himself within the rules of professional ethics," TAC ¶¶ 72, 73, Plaintiff alleges no facts to support these characterizations and conclusory allegations. *See generally* Compl. Such vague and conclusory allegations fail to state a claim under the FDCPA. *See Garcia*, 2017 WL 1230847, at *4.

Even Plaintiff's one potentially non-conclusory allegation does not suffice to show harassing conduct. Plaintiff asserts that "Defendant Chapell [sic] admitted to the plaintiff that the association had no intention of fixing the unit and would instead abuse the Connecticut Condo Act.

---

[9] Although Plaintiff states that "defendant" was the target of Defendant Chappell's alleged harassment, the Court believes Plaintiff intended to say "plaintiff."

13

[sic] to foreclose and exhaust the plaintiff's equity." *Id.* ¶ 68.  While this is a threat of litigation, the FDCPA only prohibits such threats of litigation where the party making the threat knows such litigation could not legally be pursued.  *See Gervais v. Riddle & Assocs.*, 479 F. Supp. 2d 270, 273 (D. Conn. 2007); *see also* 15 U.S.C. § 1692e(5).  Here, the foreclosure action Defendant Chappell threatened could be—and actually was—pursued.  *See* TAC ¶ 69.  Therefore, even when viewing the facts in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff has asserted sufficient facts to state an FDCPA claim.  Rather, Plaintiff has relied on conclusory allegations regarding Defendant Chappell's actions, which are insufficient to establish a claim under *Twombly* and *Iqbal*.

As Plaintiff's FDCPA claim against Defendant Feldman, Perlstein, and Greene, LLC relies on the theory of *respondeat superior* to hold the law firm responsible for the actions of Defendant Chappell, it too fails, in light of the dismissal of Plaintiff's FDCPA claim against Defendant Chappell.  *See Vilkofsky v. Specialized Loan Servicing, LLC*, 2:16-cv-01291-NBF, 2017 WL 2573874, at *6, n.9 (W.D. Pa. June 14, 2017) (dismissing an FDCPA claim brought under the theory of *respondeat superior* where FDCPA claims against the alleged agent were dismissed).

For these reasons, Plaintiff's FDCPA claims are dismissed.  The Court does not reach the Attorney Defendants' litigation privilege arguments, as it is not necessary to do so.

### 2.  FHA

Plaintiff's FHA claim against Defendant O'Gorman is also dismissed.

The FHA prohibits discrimination in housing.  *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 93 (1979). Although Plaintiff does not specify a particular section of the FHA under which he asserts his claims, *see* TAC at 8–11, the Court believes he intended to assert violations of the reasonable accommodations provision, which prohibits a housing provider from discriminating

against a person with a handicap by refusing "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(2), (3)(B).

To state a claim under this provision, Plaintiff must allege that (1) he or someone he would live with suffers from a handicap as defined by the FHA; (2) the defendants knew or reasonably should have known of the handicap; (3) accommodation of the handicap was likely necessary to afford the person with the handicap an equal opportunity to use and enjoy the dwelling; (4) the requested accommodation was reasonable; and (5) the defendant refused to make such an accommodation.  *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014).

Plaintiff fails to allege sufficient facts to establish the first element—that Plaintiff's asthma (or his children's asthma) is a handicap as defined by the FHA.  The FHA defines a handicap, in relevant part, as "a physical or mental impairment which substantially limits one or more of [a] person's major life activities."  42 U.S.C. § 3602(h).  Although the FHA does not define "major life activities," courts in this Circuit have relied on regulations promulgated by the Department of Housing and Urban Development ("HUD") to define that phrase.  *See Olsen*, 759 F.3d at 152.  HUD regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  24 C.F.R. § 100.201(b).

Where asthma is the alleged handicap, courts must assess whether the specific facts alleged support the conclusion that that asthma substantially limits a person's major life activities.  *See Dawes v. New York City Hous. Auth.*, No. 20-cv-1417 (JGK), 2022 WL 4367204, at *2 (S.D.N.Y. Sept. 22, 2022) ("Whether a plaintiff with asthma is substantially limited in his ability to work or breathe is a fact specific question." (cleaned up)); *Mercer v. New York City Hous. Auth.*, No. 19

15

Civ. 8842 (LGS), 2021 WL 230124, at *3 (S.D.N.Y. Jan. 22, 2021 (holding that Plaintiff's factual allegations failed to establish that asthma substantially limited his breathing or other major life activity); *see also Burke v. Niagara Mohawk Power Corp.*, 145 F. App'x 527, 529 (2d Cir. 2005) (noting that "asthma does not invariably impair a major life activity" such that a person is "disabled" within the meaning of the Americans with Disabilities Act).

Plaintiff alleges only that that "his minor children suffered from childhood asthma, as did he as a child and could not tolerate exposure to mildew or black mold."[10] TAC ¶ 43. Such a statement is insufficient to establish whether Plaintiff, himself, ever experienced asthma while living in the unit, and it falls far short of establishing that his asthma substantially limits his ability to breathe or engage in another major life activity in his condo. *See, e.g.*, *Mercer*, 2021 WL 230124, at *3 (holding that Plaintiff's asthma did not constitute a handicap where "the Amended Complaint contains no allegations to explain how Plaintiff is handicapped—describing what major life activity of Plaintiff's is impaired and how the activity is substantially limited by Plaintiff's condition."). Additionally, even taking as true the allegation that Plaintiff's children could not tolerate exposure to mildew or black mold, and drawing the reasonable inference that his children would live with him, the TAC does not explain how their asthma substantially impairs their major life activities.[11] Because Plaintiff fails to allege sufficient facts to establish that he or his children

---

[10] In his objections to the Westwood Defendant's motion to dismiss, Plaintiff asserts additional facts beyond those including in the TAC regarding his and his children's asthma, as well as his sleep apnea. *See* Pl.'s Br., ECF No. 86, at 4–5. The Court, however, cannot consider these alleged facts because they were not included in Plaintiff's TAC. *See Miley v. Hous. Auth. of City of, Bridgeport*, 926 F. Supp. 2d. 420, 432 (D. Conn. 2013) ("It is well established that plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." (citing cases) (cleaned up)). Again, the Court does not afford Plaintiff the solicitude that might be afforded to ordinary *pro se* litigants in this regard, given that he is an attorney.

[11] The Westwood Defendants also argue that Plaintiff's factual allegations related to his children's asthma were improper because they are not named Plaintiffs in this lawsuit. *See* ECF No. 77-1 at 10. However, the FHA contemplates a plaintiff bringing an FHA reasonable accommodations claim if someone with whom they would live has a handicap, even if the plaintiff is not himself handicapped. *See generally Olsen*, 759 F.3d at 156. Thus, the Court is not persuaded by this argument.

have a handicap as defined under the FHA, the Court declines to consider the other factors necessary to establish an FHA claim and dismisses Plaintiff's FHA claim as to Defendant O'Gorman.

## IV. REMAINING STATE LAW CLAIMS

Having dismissed all of Plaintiff's claims brought under federal law, the Court now considers, as urged by the Attorney Defendants, *see* ECF No. 76 at 11, whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims of negligence and breach of fiduciary duty against Defendant O'Gorman, and unjust enrichment against the Attorney Defendants. Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which outlines the circumstances under which claims that independently cannot qualify for federal jurisdiction can nonetheless be heard in federal court. Specifically, 28 U.S.C. § 1367(c)(3) allows for a district court to decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.

A district court should not decline to exercise supplemental jurisdiction under Section 1367(c) without evaluating whether doing so would promote the values of economy, convenience, fairness, and comity. *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). But "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

The Court finds that the factors of judicial economy, convenience, fairness, and comity counsel in favor of declining to exercise supplemental jurisdiction. This case, which is only now

making its way through the motion to dismiss stage, is far from trial. Plaintiff is no stranger to litigating in state court. In fact, he has represented himself in a related action before the Connecticut Superior Court. *See* Attorney Defs.' Ex. A, ECF No. 89-1 (containing the docket of a state foreclosure action involving the Attorney Defendants and Westwood Condominium Association, Inc.). Therefore, the Court finds that requiring the remaining state law claims to be litigated before a state court to be both fair and in support of comity and judicial efficiency.

In light of these considerations, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## V. LEAVE TO AMEND

Under Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend his complaint once as a matter of course within twenty-one days after service of the complaint or within twenty-one days after service of a responsive pleading. *See* Fed. R. Civ. P. 15(a)(1)(A)–(B). Otherwise, the plaintiff may amend his complaint only with "the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court "has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Futility may be demonstrated where a plaintiff has had prior opportunity to amend his complaint after defendants have identified pleading deficiencies and still has failed to allege sufficient facts to state a claim. *See Bank v. Gohealth, LLC*, 21-1287-cv, 2022 WL 1132503, at *2 (2d Cir. Apr. 18, 2022) (affirming district court's dismissal without leave to amend where *pro se* attorney twice failed to sufficiently amend a complaint following motions to dismiss); *Levy v. BASF Metals Ltd.*, 755 F. App'x 29, 30–31 (2d Cir. 2018) (same). "A plaintiff need not be given

leave to amend if [he] fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in [his] complaint." *Technomarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *see also Bank*, 2022 WL 1132503, at *2.

Plaintiff, a licensed attorney, has previously amended his complaint three times with the benefit of both Defendants and the Court identifying deficiencies for him to cure. *See* ECF Nos. 51 (first amended complaint filed in response to Attorney Defendants' first motion to dismiss), 55 (second amended complaint filed in response to an order identifying infirmities in the first amended complaint), 72 (third amended complaint filed in response to an order dismissing all claims). Despite these repeated opportunities, he has failed to plausibly allege any federal claims. Plaintiff has not affirmatively sought leave to amend in either of his response briefs, or proposed how he would amend his complaint to adequately state a claim upon which relief could be granted, if given the opportunity to do so. Instead, in response to the Attorney Defendants' argument that Plaintiff should be denied leave to amend, he asserts an unclean hands argument. Although Plaintiff does allege new facts related to his asthma and his children's asthma and asserts that he has sleep apnea for the first time in his response to the Westwood Defendants' motion to dismiss, he neither acknowledges that he failed to allege these new facts in his TAC nor requests leave to amend to incorporate those facts into his complaint. But, even considering those additional facts, the Court does not find that they would cure the deficiencies in Plaintiff's FHA claim. For these reasons, the Court finds that any further amendment would be futile.

Additionally, the Court finds that providing Plaintiff leave to amend for a fourth time would prejudice Defendants. In determining what constitutes prejudice, the court considers whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent

the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (collecting cases). Defendants here have already filed multiple motions to dismiss each. If Plaintiff were granted leave to amend yet another time, these Defendants would be required to expend even more resources responding to a fourth amended complaint. Additional amendment would also further delay resolution of this dispute, which has already been ongoing since August of 2023 and has not yet proceeded past the motion to dismiss stage.

Because any further amendment would be futile and would prejudice Defendants, the Court declines to grant Plaintiff leave to amend.

## VI.     CONCLUSION

For the reasons described herein, Defendants' motions to dismiss are GRANTED as to all claims asserted against Defendants Westwood Condominium Association, Eric Judge, Michelle Anderson, Xiomara Pagan, Judy Carr, Rosa Bustamante, and Westford Real Estate Management; Plaintiff's FDCPA claims; and Plaintiff's FHA claims. Because the Court finds that Plaintiff's federal claims must be dismissed, it declines to exercise supplemental jurisdiction over his state law claims against all Defendants. Further, as Plaintiff has already amended his complaint three times, the Court denies leave to amend.

The Clerk is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2025.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE